IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SEDRICK F. JACKSON, #10064-035

PETITIONER,

v.                                                    CIVIL ACTION NO. 5:04cv19BrSu

M. PETTIFORD, WARDEN,                                 2:06CV509-WHA

RESPONDENT.

**RESPONDENT'S ANSWER TO PETITION FOR
WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

I.   **PRELIMINARY STATEMENT.**

The Respondent, M. Pettiford, Warden of the Federal Correctional Institution, Yazoo City, Mississippi (FCI Yazoo City), by and through the undersigned Assistant United States Attorney, submits this Answer to the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the relief sought by the Petitioner, Sedrick Fitzgerald Jackson (Jackson), should be denied, and his Petition should be dismissed with prejudice.

II.  **STATEMENT OF FACTS.**

   A.   **Procedural Background.**

Jackson is a 33-year old male inmate serving an 86-month sentence at the FCI Yazoo City for Possession with Intent to Distribute Cocaine and Convicted Felon in Possession of Ammunition. Jackson was originally sentenced to 144 months by the Honorable Judge F. A. Little, Jr., in the Western District of Louisiana on June 14, 1999, but he was given a reduction of sentence to 86 months. (See Exhibit #1 - Judgment in a Criminal Case[1], and Exhibit #2 - Public

---

[1] Pages 1- 6 of the Judgment in a Criminal Case are included, but not Page 7 of 7, the Statement of Reasons (SOR). The Bureau of Prisons (BOP) has found inmates will pressure each other to see such documents, which may show whether or not the inmate cooperated with the Government. Accordingly, for security reasons, the BOP has prohibited inmates from having copies of SORs in their possession. Jackson's SOR reflects no information relevant to the resolution of this case; thus, page 7 is excluded. If the Court wishes to review the SOR, a copy can be provided.

Information Inmate Data as of 02-18-2004, at Page 003.) He is projected for release on August 18, 2007. (*Id.*)

This case is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (See Order dated February 4, 2004.) 28 U.S.C. § 2241 allows suit by confined persons who allege violations of law which make the duration of confinement illegal. Since Jackson's Petition concerns the duration of his confinement, 28 U.S.C. § 2241 is the proper statute. Jackson has brought this action in the district where he is confined, which is proper.

Jackson alleges he was arrested by state authorities on July 13, 1998, and was in primary State custody.[2] (Petition at Pages 7, 10.) Thereafter, on September 21, 1998, he was taken on a federal writ for purposes of federal prosecution and sentencing. He was sentenced on June 14, 1999. (*Id.* at Pages 10-11.) Thereafter, he was taken to a federal institution in Beaumont (Texas) on July 22, 1999, and incarcerated. (*Id.* at Pages 12, 16.) Jackson contends his federal sentence began to run at that time. (*Id.* at Page 16.) He also asserts that he is entitled to have the federal sentence computation start on July 22, 1999, because the sentencing court was require to run the sentences concurrent pursuant to the U.S. Sentencing Guidelines (5G1.3), since his State and federal charges are related. (*Id.*) Jackson seeks an Order from the court directing the Warden to credit the time against his federal sentence.

**B.    Factual Background.**

On October 6, 1998, Jackson was in State of Louisiana custody, and was taken into federal physical custody on a Writ of Habeas Corpus Ad Prosequendum (WHCAP) by the U.S. Marshals Service (USMS). (See Exhibit #3 - USM Forms 129 - District 35, at Page 1.[3])

---

[2] The Respondent does not concede to the accuracy of Jackson's allegations, dates or the conclusions.

[3] The USM Forms 129 bear a statement that they are not to be released further without permission from the USMS. On February 19, 2004 the USMS General Counsel's Office granted permission to release the Forms 129 to file in court.

2

On June 14, 1999, Jackson was sentenced on his plea of guilty, to 144 months incarceration. (See Exhibit #1 - Judgment in a Criminal Case, Exhibit #2 - Public Information Inmate Data as of 02-18-2004, at Page 003, and, Exhibit #3 - USM Forms 129, at Page 1.)[4]

On July 22, 1999, Jackson, who had been designated to the medium security institution at the Federal Correctional Complex in Beaumont, Texas, was delivered to the institution by the USMS. (See Exhibit #2 - Public Information Inmate Data as of 02-18-2004, at Page 002, and, Exhibit #3 - USM Forms 129, at Page 2.)

On April 19, 2000, Jackson arrived at the Federal Correctional Institution in Marianna, Florida (FCI Marianna), where he had been redesignated. (See Exhibit #2 - Public Information Inmate Data as of 02-18-2004, at Page 002.) Staff at FCI Marianna detected Jackson had been mistakenly taken to a BOP institution rather than returned to State custody after he was sentenced.[5] On April 19, 2000, his status was changed from a designated inmate to a holdover inmate. Then, on June 7, 2000, his identification status was changed to "State Prisoner." (See Exhibit #2 - Public Information Inmate Data as of 02-18-2004, at Page 002.)

On June 23, 2000, Jackson was taken back to court for resentencing by the USMS. (See Exhibit #2 - Public Information Inmate Data as of 02-18-2004, at Page 002, and, Exhibit #3 - USM Forms 129, at Page 2.)

On July 5, 2000, the sentencing court reduced Jackson's sentence to 86 months, and he was turned over to the State to finish his state sentence rather than returned to a BOP institution. The USMS lodged a detainer with the State to obtain custody of Jackson at the end of his State sentence. (See Exhibit #3 - USM Forms 129, at Page 1.)

On May 21, 2001, the State released Jackson to his federal sentence, and his federal sentence is computed beginning as of that day. (See Exhibit #3 - USM Forms 129, at Page 2, and Exhibit #2 - Public Information Inmate Data as of 02-18-2004, at Page 004.)

---

[4] On this same day, the State sentenced Jackson on its criminal charges as well, to five years, concurrent with Jackson's federal sentence. (See Petition, Exhibit B.)

[5] The BOP policy in effect at the time, Program Statement 5160.04, Designation of State Institution for Service of Federal Sentence (now replaced by P.S. 5160.05), provided if an inmate was determined to have been improperly committed to federal custody, staff were to return the inmate to State custody. (See Exhibit #3A - Program Statement 5160.04, relevant pages.)

3

After he had been at FCI Yazoo City for some time, Jackson began to use the Administrative Remedy Program (28 C.F.R. 542.10, et seq.) to ask for credit for the time since he was arrested by the State, including the time he had mistakenly been in BOP physical custody rather than State custody. FCI Yazoo City staff determined that the time from July 31, 1998 to May 21, 2001 was applied to Jackson's State sentence, and thus Jackson was not entitled to have such time credited towards his federal sentence. (See Exhibit #4 - Request for Administrative Remedy - Attempt at Informal Resolution, and Response.)

Jackson appealed this determination, seeking credit against his federal sentence for all the time from July 31, 1998 (the date of his arrest on state charges) to May 21, 2000. The Warden denied the request. Jackson was not entitled to the time (including the time he served in a BOP institution by mistake), since the State had given him credit for all that time against his State sentence, and also, since his sentencing judge had not specified a concurrent sentence, the federal sentence would be consecutive. (See Exhibit #5 - Request for Administrative Remedy, and Response dated August 11, 2003 .) Jackson appealed the decision to the Regional level. The appeal was denied. However, Jackson was advised that the sentencing court would be contacted to see if there was an objection to nunc pro tunc designation to the State institution for service of the federal sentence (which would result in partial credit for the time.) (See Exhibit #6 - Regional Administrative Remedy Appeal, and Response dated October 9, 2003.) Jackson appealed the decision to the Central Office level. The appeal was denied. (See Exhibit #7 - Central Office Administrative Remedy Appeal, and Response dated December 31, 2003.)

Consistent with the Regional level response, on October 6, 2003, Regional Inmate Systems Administrator John Gaither wrote to Judge Little, asking whether the court had objections to designation of the State institution nunc pro tunc for service of Jackson's federal sentence. The letter explained, if Judge Little did not object, the sentence would start the day it was imposed, June 14, 1999. If Judge Little did object, it would start on May 21, 2001. (See Exhibit #8 - Letter to Judge Little dated October 6, 2003.)

On October 14, 2003, Judge Little replied, stating that the federal and State sentences should run consecutive to each other. (Contrary to Jackson's assertion, Judge Little also stated

the State and federal charges were unrelated to each other.) (See Exhibit #9 - Letter to John Gaither from Judge Little dated October 14, 2003.)

On October 17, 2003, Jackson was advised the court had objected and that the BOP had determined it would not make a nunc pro tunc designation to the State institution. (See Exhibit #10 - Letter to Sedrick Jackson from John Gaither dated October 17, 2003. [6])

### III.    ARGUMENT

#### A.    JACKSON IS NOT ENTITLED TO CREDIT FOR THE TIME HE WAS SERVING HIS STATE SENTENCE, INCLUDING THE TIME HE WAS MISTAKENLY IN THE BOP'S PHYSICAL CUSTODY (BUT STATE PRIMARY JURISDICTION), BECAUSE THE STATE GAVE HIM CREDIT FOR THAT TIME AGAINST HIS STATE SENTENCE.

##### 1.    The State of Louisiana Had Primary Jurisdiction over Jackson Until He Completed the State Sentence.

When Jackson was arrested by State authorities, in so doing they acquired primary jurisdiction over him.[7] Long established rules of comity dictate the first sovereign to arrest a defendant has primary jurisdiction for trial, sentencing and incarceration. *Zerbst v. McPike*, 97 F.2d 253 , 254 (5th Cir. 1938)("Under the inviolable rules of comity, which are reciprocal, the State having first arrested and imprisoned McPike could not without its consent be deprived of his custody until through with him.") See also *Taylor v. Reno*, 164 F.3d 440, 444, n. 1 (9th Cir. 1998)("the state obtained primary jurisdiction over Taylor when it arrested him on the state murder charges," and, "A lack of 'primary jurisdiction' does not mean that a sovereign does not have jurisdiction over a defendant. It simply means that the sovereign lacks priority of jurisdiction for purposes of trial, sentencing and incarceration"), *cert. denied* 527 U.S. 1027 (1999); *In Re Liberatore*, 574 F.2d 78, 88-89 (2nd Cir. 1978)(" . . . the sovereignty which first arrests the individual acquires the right to prior and exclusive jurisdiction over him [citations

---

[6] The U.S. Attorney's Office for the Western District of Louisiana also expressed its views such a designation would not be appropriate, and advised the BOP as it had the court. (See Exhibit #11 - Letter to John Gaither from AUSA Brett L. Grayson dated November 10, 2003.)

[7] Jackson notes this in the Petition too. See Petition at Page 10, and Nt.6.

5

omitted], and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty.")

When Jackson was taken into federal custody on writ, the State retained primary jurisdiction over him, because he was only "borrowed" by the federal Government. *Causey v. Civilette*, 621 F.2d 691, 693 (5th Cir. 1980)("The law is clear in this Circuit that, if a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary . . . A writ of habeas corpus ad prosequendum is only a "loan" of the prisoner to another jurisdiction for criminal proceedings in the receiving jurisdiction.") <u>See also</u> *Thomas v. Whalen*, 962 F.2d 358, 361, n. 3 (4th Cir. 1992) (stating "[a] prisoner is not even in custody for purposes of section 3568 when he appears in federal court pursuant to a writ *ad prosequendum*; he is merely 'on loan' to federal authorities." Collecting cases. Italics in original.)[8]

In Jackson's situation he was first arrested by State authorities. On October 6, 1998, he was taken into federal physical custody <u>on writ of habeas corpus ad prosequendum</u> to answer the federal charges. On June 14, 1999, when he was sentenced on the federal charges he was in federal physical custody, but pursuant to the writ. There was a preexisting reason---the state arrest---for his detention by the State. This preexisted not only his being taken into federal custody on the writ on October 6, 1998, but also his placement at a federal institution. Accordingly, Jackson remained in primary State of Louisiana custody until May 21, 2001, when his State sentence was completed. Accordingly, he should not receive credit against his federal sentence for the same period credited against his State sentence.

### 2. Jackson May Not Claim Credit Against Both Sentences -- 18 U.S.C. § 3585(b).

The BOP policy on awarding credit tracks the provisions of 18 U.S.C. § 3585(b). Program Statement 5880.28, <u>Sentence Computation Manual (CCA of 1984)</u>, establishes the statute as controlling. (<u>See</u> Exhibit #13 - P.S. 5880.28, Relevant Pages, at Pages 1 - 14.) Then, in

---

[8] 18 U.S.C. § 3568 (repealed) is the predecessor statute to 18 U.S.C. § 3585.

accordance with the statute, it provides, "[c]redit will be given for time spent in official detention as a direct result of the federal offense for which the federal sentence was imposed (and not as a result of a writ from another jurisdiction), provided it has not been credited against another sentence," and, "[c]redit will not be given for any portion of time spent serving another sentence regardless of whether the sentence is federal, state or foreign." *Id.*, at pages 1-16 and 1-17.

Since Jackson was in primary State custody and received credit against his State sentence for the time he was on federal writ (which includes the time he was mistakenly in BOP custody before the mistake was discovered), he is not entitled to receive credit for that time against his federal sentence too. This has been the law of this circuit for quite some time. See *Howard v. United States*, 420 F.2d 478, 480 (5th Cir. 1970)( prisoner "appeared in federal court for arraignment and sentencing under authority of federal writs of habeas corpus ad prosequendum. Thus he is not entitled to have this time credited toward his federal sentence."); *Chaplin v. United States*, 451 F.2d 179, 181 (5th Cir. 1971)(". . . petitioner was exclusively in state custody for a state parole violation except when appearing in federal court via writ of habeas corpus ad prosequendum. Upon this finding, petitioner is not entitled to credit toward his federal sentence for such time spent in state custody.") Now, of course, jail time credit is governed by 18 U.S.C. § 3585(b), which specifies:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> (1) as a result of the offense for which sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> <u>that has not been credited against another sentence</u>.

(emphasis added).

The Supreme Court has explained that when Congress enacted 18 U.S.C. § 3585(b) it altered the effects of 18 U.S.C. § 3568 and "made clear that a defendant could not receive a double credit for his detention time." *United States v. Wilson*, 503 U.S. 329, 337 (1992). Courts

7

have followed this Congressional mandate. See also *Rios v. Wiley*, 201 F.3d 257, 274 (3rd Cir. 2000)(stating the prisoner remained in primary state custody while on federal writ and "[t]hus, we agree with those courts which have determined that the general rule prohibiting double credit articulated in section 3585(b) applies equally to situations where, as here, the prisoner was in federal control pursuant to a writ of habeas corpus ad prosequendum during the time period for which a pre-sentence credit is sought"); *McClain v. Bureau of Prisons*, 9 F.3d 503 (6th Cir. 1993)(18 U.S.C. § 3585 is intended to prevent double credit for detention served before a federal sentence actually begins.)

There is also the case cited in P.S. 5160.04, *Crawford v. Jackson*, 589 F.2d 693, 695 (D.C. Cir. 1978), which illustrates the principle that merely because a prisoner on writ is mistakenly not returned immediately to serve his State sentence, that does not mean he has been received to serve his federal sentence. The *Crawford* court explained:

> The question presented for determination then is whether failure to return a prisoner to a sending state upon conclusion of the proceedings in the receiving state, and, administrative entries reflect that the prisoner has started to serve the receiving state's sentence, constitute receipt of an individual at the "penitentiary, reformatory or jail within the meaning of Title 18 U.S.C. 3568. [Footnote omitted.] We hold that it does not.

589 F.2d at 695.

Jackson was "borrowed" from state authorities on the federal writ for purposes of sentencing and not returned to state authorities immediately after imposition of the federal sentence. There was a mistake made, and he was sent to a BOP institution for some time. However, he did receive credit against the State of Louisiana sentence for the time---he makes no claim he did not---so he is not entitled to credit against his federal sentence as well. To hold otherwise would violate the prohibition against "double credit" as established by 18 U.S.C. § 3585.

### 3.  A State Court Cannot Force Its Sentencing Choices on the Federal Sovereign.

A prisoner cannot, by agreement with state authorities, force the federal Government to run his sentences concurrently. *Hawley v. United States*, 898 F.2d 1513, 1514 (11th Cir. 1990)(per curiam), stating:

Hawley argues on appeal that his consecutive federal sentence is unlawful because it deprives the State of Georgia the right to impose a concurrent sentence. We reject Hawley's argument. Because of the division of powers between the federal government and states under the dual sovereignty principle of or form of government. a defendant may not, by agreement with state authorities, compel the federal government to impose a sentence that is concurrent with an existing state sentence.

Nor may the State sovereign require the federal sovereign to assume custody of the prisoner, when it has primary custody of the prisoner, in order to make the sentences run concurrent. There is nothing which requires a federal sentence to start merely because the State intends its sentence to be concurrent. This was the case in *Opela v. United States*, 415 F.2d 231, 232 (5th Cir. 1969), which found:

> Opela's real complaint, it would seem, is that he is serving federal and state sentences consecutively, rather than concurrently as the state sentencing judge intended. . . . Although the sentencing state judge intended that this sentence should run concurrently with all other sentences then imposed upon Opela, Opela's federal sentence did not commence to run until October, 1967, when, having satisfied the state sentence, Opela was transferred back into federal custody to serve it. We may sympathize with Opela if he relied upon the State of Texas to carry out the state judge's intention. Obviously, however, the validity of his federal sentence was in no way legally affected because the State chose to incarcerate him before the federal sentence had commenced to run.

See also *United States v. Yates*, 58 F.3d 542, 549-50 (10th Cir. 1995)(principles of comity did not require federal court to impose concurrent sentence where state sentencing order directed running state sentence concurrent with any federal time. Supremacy Clause controlled over wishes of state sentencing court.)

Thus, a State court cannot impose a concurrent sentence and enable the prisoner to then claim credit against his federal sentence for time in State custody.[9] Said another way, holding a state court <u>does</u> have the power to impose its sentence concurrent to a federal one and thus require the prisoner's time in State custody to be credited against the federal sentence (in essence to make the federal sentence start), would put the courts in each of the fifty states in control of

---

[9] As an aside, nor can a State court order the prisoner into federal custody on its concurrent sentence. If it could, this would always permit state courts to trump a federal sentence, and impose the incarceration obligation on the federal government. Such a sentence would have the effect of at least delaying imposition of any costs of incarceration on the state. There is also the possibility such costs would thus be completely avoided. This effect would be especially apparent where the prisoner has a longer federal sentence.

whether the federal or state sentence is served first or second.[10] In *Taylor v. Sawyer*, 284 F.3d 1143, 1151-52 (9th Cir. 2002), *cert. denied*, 537 U.S. 1119, 123 S.Ct. 889 (2003), the court recognized this would be problematic, stating "[i]n our federal system, state courts are not constitutionally empowered to control punishment for federal crimes, nor have our states and federal government ever recognized such a practice. . . . Forcing the federal judiciary to adhere to the wishes of the state courts regarding punishment of those in federal jurisdiction because of federal crime would impinge on the rights of the federal judiciary to apply its own sentencing laws for violation of federal criminal laws." Language in state court sentencing orders imposing concurrent sentences should be considered no more than a recommendation when the prisoner is in primary state custody.

**B. THE BOP (CONSISTENT WITH THE OBJECTION FROM THE SENTENCING FEDERAL COURT) HAS EXERCISED ITS DISCRETION AND DETERMINED JACKSON SHOULD NOT RECEIVE THE BENEFIT OF A "NUNC PRO TUNC" DESIGNATION TO STATE CUSTODY.**

To provide instructions to staff for the designation of a state institution for concurrent service of a Federal sentence, the Bureau of Prisons has promulgated Program Statement 5160.05, <u>Designation of State Institution for Service of Federal Sentence</u>. (See Exhibit #14 - P.S. 5160.05.) The program statement recognizes the discretion conferred on the BOP by Congress to "designate any available penal or correctional facility . . . the Bureau determines to be appropriate and suitable . . . ." (See 18 U.S.C. § 3621(b); Exhibit #14 - P.S. 5160.05, at Page 2, Section 7.)

Under the program statement, the BOP's Regional Directors have the authority to designate a non-federal facility for concurrent service of a federal sentence. "A designation for concurrent service of sentence will be made only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system." *Id.* at Page 3, Section 8. The Regional Director, not the court, is the final authority and can make exceptions to the general

---

[10] What effect such language in a state sentencing order should have or would have vis-a-vis the prisoner and the State sentence in these circumstances is not an issue for a federal court decision. It is for those parties to work out within the state proceedings, consistent with the State's established law and precedent.

rules based on the merits of a particular case. *Id.* However, the program statement guides the Regional Director's decision, and specifies designation to a non-federal institution when the primary custody is not federal, is done when consistent with the intent of the federal sentencing court. *Id.* at Page 4, Section 9. "Ordinarily, the reason for selecting the non-federal institution is that primary custody resided with the non-federal jurisdiction and the federal sentencing court intended its sentence be served concurrently with the non-federal sentence." *Id.* See also Page 4, Section 9, b.

When the inmate requests a "nunc pro tunc" designation to the state institution, as here, the BOP's practice is to "send a letter to the sentencing court (either the Chambers of the Judge, U.S. Attorney's Office, and/or U.S. Probation Office, as appropriate) inquiring whether the court has any objections." *Id.* at Page 6, Section 9, (4)(c). If it is inconsistent with the intent of the sentencing court, unless the goals of the criminal justice system warrant an exception based on the merits of the particular case, designation to the state institution is not made. See *Id*, Page 4, Section 8, a.

Under 18 U.S.C. 3621(b), authority to designate a state institution for service of a federal sentence is assigned to the Bureau of Prisons, and a court cannot make such a designation. The BOP cannot avoid its duty to exercise such consideration. *Barden v. Keohane*, 921 F.2d 476 (3rd Cir. 1990)(BOP has exclusive discretionary authority to designate state institution for service of federal sentence, but failure to even consider inmate's request was error) ; *Taylor v. Reno*, 284 F.3d 1143, 1148-49 (9th Cir. 2002)(BOP policy statement, providing for designations to state institutions when consistent with the sentencing federal court, is consistent with the provisions of 18 U.S.C. § 3584.)

Cases have found that the courts have no jurisdiction to order an inmate's designation to a State institution for service of the state sentence or transfer into federal custody. See *Taylor, supra*. 284 F.3d at 1146 n. 3 (citing previous case by Taylor, and stating "the district court lacked jurisdiction to commence the federal sentence because Taylor was then in the primary custody of the State of Oregon"); *United States v. Hill*, 48 F.3d 228 (7th Cir. 1995)("the responsibility for deciding when the federal sentences shall be deemed to begin--whether when the defendant

began serving his state sentence . . . or not until the defendant, having completed his state prison term, was delivered into federal custody, which would make the federal sentence consecutive--remains with the Attorney General of the United States. [citations omitted].")

As stated above, the BOP considered Jackson's request for designation to the State institution "nunc pro tunc" and denied it. Under the law, that is the extent of Jackson's right. He had the right to request the BOP to make a decision about such a designation, but he has no right to insist it be favorable.

### C. THE SENTENCING COURT IS THE APPROPRIATE COURT TO CHALLENGE THE APPLICATION OF THE SENTENCING GUIDELINES, NOT THIS COURT.

Jackson asserts his offenses were related, but Judge Little's letter to John Gaither explains Jackson was on parole at the time of the offense, and under the supervision of the Louisiana Department of Corrections. Thus, under the guidelines, the sentence is appropriately consecutive. Also, Judge Little, despite Jackson's assertions, states the State charge was unrelated to the federal offense. (See Exhibit #9 - Letter to John Gaither from Judge Little dated October 14, 2003.)

The BOP has chosen to follow the guidance of the sentencing court and calculate Jackson's sentence as consecutive to his state sentence. If Jackson wants to challenge this aspect of his sentence, he should be required to do so in the sentencing court. A challenge to the validity of a sentence must be pursued in a § 2255 motion with the court of conviction rather than a § 2241 petition in the district of incarceration. Pack v. Yusuff, 218 F.3d 448, 451-452 (5th Cir. 2000).

### IV. CONCLUSION

The BOP has determined that Jackson is not entitled to credit for the time he was serving his State sentence, including the time he was mistakenly in the BOP's physical custody (but State primary jurisdiction), because the State gave him credit for that time against his State sentence. Jackson challenges this. He wants the BOP to credit him for the time he served on his State of Louisiana sentence. His attempt to force the BOP to do so should fail. Jackson's petition should

be denied because: (1) Jackson was in the primary custody of the State of Louisiana and had not completed his State obligation/sentence until May 21, 2001; (2) under 18 U.S.C. § 3585, Jackson may not receive credit against his federal sentence for the same period credited against his State sentence; (3) a State court cannot force its choices on federal officials as to running of the federal sentence, (4) the BOP (consistent with the objection from the sentencing federal court) has exercised its discretion and determined Jackson should not receive the benefit of a "nunc pro tunc" designation to State custody; and, (5) the sentencing court is the place to challenge the application of the sentencing guidelines, not this court. Respondent respectfully submits that Jackson's application for writ of habeas corpus is without merit and should be denied and this case dismissed with prejudice.

Respectfully submitted,

DUNN LAMPTON
UNITED STATES ATTORNEY

By: *[signature]*

H. COLBY LANE
Assistant U. S. Attorney
Mississippi Bar No. 99617
188 E. Capitol Street, Suite 500
Jackson, Mississippi 39201
Telephone No.:      601/965-4480
Facsimile No.:      601/965-4409

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the above and foregoing Respondent's Answer to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 has been mailed, postage prepaid, to the following individual:

Sedrick F. Jackson
Reg. # 10064-035
Federal Correctional Institution
Post Office Box 5000
Yazoo City, MS 39194-5000

This the 26th day of February, 2004.

                                                                             /s/ H. Colby Lane
                                                                             H. COLBY LANE
                                                                             Assistant United States Attorney